# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA GUERRERO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY.<br><br>　　　　Defendant. | Case No. 1:16-cv-00573-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 26, 27) |

**I.**

**INTRODUCTION**

Plaintiff Claudia Guerrero ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from diabetes mellitus, hypertension, alleged back impairment, a history of methicillin-resistant staphylococcus aureus, major depressive disorder, learning disorder, borderline intellectual functioning, and anxiety disorder. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied and Defendant's motion for summary judgment

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 11, 15.)

shall be granted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on October 20, 2011. (AR 274.) Plaintiff's application was initially denied on April 19, 2012, and denied upon reconsideration on October 31, 2012. (AR 131-135, 138-142.) Plaintiff requested and received a hearing before Administrative Law Judge Danny Pittman ("the ALJ"). Plaintiff appeared for a hearing on October 29, 2013 which was continued so she could obtain representation. (AR 75-82.) Plaintiff subsequently appeared for a hearing on May 29, 2014. (AR 44-74.) On June 27, 2014, the ALJ found that Plaintiff was not disabled. (AR 23-38.) The Appeals Council denied Plaintiff's request for review on February 19, 2016. (AR 1-3.)

**A.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since the application date of October 20, 2011.
- Plaintiff has the following severe impairments: major depressive disorder, learning disorder, borderline intellectual functioning, and anxiety disorder.
- Plaintiff does not have an impairment or combination of impairments that meet or equal the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels except she is limited to simple, routine public contact, and superficial interpersonal interactions with coworkers and needs to avoid concentrated exposure to hazards.
- Plaintiff has no past relevant work, therefore transferability of job skills is not an issue.
- Plaintiff was born on July 4, 1974 and was 37 years old, which is defined as a younger individual, on the date the application was filed.
- Plaintiff has a limited education and is able to communicate in English.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since October 20, 2011, the date the application was filed.

(AR 31-37.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

| | |
|---|---|
| 1 | Congress has provided that an individual may obtain judicial review of any final decision |
| 2 | of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). |
| 3 | In reviewing findings of fact in respect to the denial of benefits, this court "reviews the |
| 4 | Commissioner's final decision for substantial evidence, and the Commissioner's decision will be |
| 5 | disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. |
| 6 | Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a |
| 7 | scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) |
| 8 | (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, |
| 9 | considering the record as a whole, a reasonable person might accept as adequate to support a |
| 10 | conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of |
| 11 | Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)). |
| 12 | "[A] reviewing court must consider the entire record as a whole and may not affirm |
| 13 | simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting |
| 14 | Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not |
| 15 | this Court's function to second guess the ALJ's conclusions and substitute the court's judgment |
| 16 | for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is |
| 17 | susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be |
| 18 | upheld."). |

### IV.

### DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to include Plaintiff's lack of English literacy in the residual functional capacity assessment. Plaintiff argues that the ALJ did not meet his burden to find that Plaintiff has sufficient ability to read and write to be found literate in English and there is no evidence in the record to support a finding of literacy or illiteracy. Plaintiff contends that the ALJ did not offer any explanation as to why Plaintiff could perform jobs that were not consistent with Plaintiff's illiteracy. Plaintiff also argues that the ALJ erred by failing to include all the moderate limitations opined by Dr. Portnoff in the residual functional capacity assessment.

1    Defendant responds that substantial evidence supports the residual functional capacity assessment and Plaintiff's challenges to the ALJ's residual functional capacity assessment are meritless. Defendant contends that literacy is not a component of the residual functional assessment, but is an educational factor to be considered. Further, Defendant argues that the ALJ properly relied on the State Agency physicians' translation of Plaintiff's moderate limitations in developing the residual functional capacity. Finally, Defendant argues that the ALJ properly found that Plaintiff was literate and Plaintiff has identified no inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

**A.     Literacy in English**

1.      <u>Substantial Evidence Supports the Finding That Plaintiff is Literate in English</u>

Plaintiff argues that the ALJ erred in finding that she was literate in English. Defendant contends that Plaintiff bears the burden of establishing illiteracy, however, "[t]he Commissioner has the burden to show that the claimant can perform other work existing in the national economy, 'given his residual functional capacity, age, education, and work experience.' " <u>Silveira v. Apfel</u>, 204 F.3d 1257, 1262, n.14 (9th Cir. 2000). Since literacy is only relevant to the finding of whether Plaintiff can perform other work in the economy, and not to whether she is disabled, the Commissioner bears the burden of establishing literacy. <u>Id.</u>

The Social Security regulations define illiteracy as an inability to read and write. 20 C.F.R. § 416.964(a)(1). The Ninth Circuit has held "only literacy in English is considered, since literacy in other languages has little effect on the number of jobs in the national economy available to the claimant. 20 C.F.R. § 416.964(b)(5). 'Illiterate' therefore means illiterate in English." <u>Chavez v. Dep't of Health and Human Services</u>, 103 F.3d 849, 852 (9th Cir. 1996); <u>see also</u> <u>Silveira</u>, 204 F.3d at 1261 (illiteracy is the inability to read or write in English). However, "[w]hile illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(I). "Thus, the functional capability for a full range of sedentary work

represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18–44 even if they are illiterate or unable to communicate in English." Id.

The ALJ found that Plaintiff's command of English was sufficient for her to testify clearly and coherently in English at the May 29, 2014 hearing. (AR 29.) When the May 29, 2014 hearing commenced, Plaintiff was assisted by a Spanish language interpreter. (AR 46.) After asking Plaintiff a few questions, the following exchange ensued.

> Q  All right. Before we go further, I want to ask you about your ability to speak English. It seems like you're answering a lot of questions before the interpreter interprets them.
> And looking at your school records, it seems like you should be able to speak English pretty well based on the grades you received at Selma Unified School District. So my question to you is do we need an interpreter?
> A  What do you mean interpreter?
> Q  You speak English, right?
> A  Yeah, but sometimes I don't understand.
> Q  You went to school in America, right?
> A  Yes.
> Q  So what I would like to do is conduct the hearing in English, and if you don't understand something we'll have the interpreter interpret it, okay?
> A  Okay.

(AR 48-49.)

The ALJ also considered that Plaintiff was never held back in school but dropped out in the 11th grade after she turned 18 and was no longer required to attend. (AR 33, 50-51, 70.) The ALJ asked if Plaintiff took special education classes in school. (AR 51.)

> A  Yeah, in high school.
> Q  And what classes did you have special ed in?
> A  In I think reading or English, but I don't know.
> Q  But you're able to read and write okay, right?
> A  Yes.

(AR 51.) Although Plaintiff argues that it is unclear whether she is able to read English, given the context of the question and answer the ALJ could reasonably conclude by Plaintiff's response that she was able to read and write some English.

In questioning Plaintiff about her ability to follow simple instructions, the ALJ asked if Plaintiff would be able to follow written instructions. (AR 59.) Plaintiff responded "Just read it and then I could get everything." (AR 59.)

The ALJ also considered Plaintiff's educational records showing that she received

6

education services in elementary and high school in the United States. (AR 34.) Plaintiff's school records from May 22, 1984 state that she should use the 2nd basal reader. (AR 351.) Her level of reading achievement was 2.5. (AR 351.) In third grade, Plaintiff's reading score was 2.8 and writing was 1.9. (AR 353.) She passed the test on her second try. (AR 353.) In 1986, Plaintiff's reading score was 2.5. (AR 383.) In 1987, her reading score was 2.4; and in 1988 her reading score was 3.3. (AR 381.) By sixth grade, Plaintiff was reading at a fourth grade level. (AR 383.)

In seventh grade, Plaintiff received Ds in reading, and Bs and an F in bilingual language arts. (AR 367.) In eighth grade, Plaintiff received Cs and Ds in English as a second language, Cs and a D in reading, and a B and C in language arts. (AR 366.) Plaintiff received As and Bs in language lab in high school. (AR 405-407.) In tenth and eleventh grade, Plaintiff received passing grades in English. (AR 376.)

Although Plaintiff was an English as a Second Language student, she attended school into the eleventh grade in the United States and obtained passing grades. While Plaintiff's sister completed paperwork for her and Plaintiff testified that she reads the bible in Spanish, there is substantial evidence in the record to support the ALJ's finding that Plaintiff was literate in English.

2. <u>The ALJ identified Jobs Consistent with Plaintiff's Literacy</u>

Literacy is is a vocational factor to be considered by the ALJ. 20 C.F.R. § 416.964. While Plaintiff argues that the ALJ erred by not including her illiteracy in her residual functional capacity, the proper question is whether the jobs identified by the VE conflict with the DOT.

Although Plaintiff argues that the VE opined that Plaintiff could perform the jobs of assembler, DOT 706.684-042, or film developer, DOT 976.685-014, the ALJ found that Plaintiff was able to work as a commercial cleaner, DOT 381.687-014; hand packer, DOT 920.587-018, and landscape laborer, DOT 408.687-014. (AR 37, 71.) The occupations of commercial cleaner and hand packer require a language level of 1. Dictionary of Occupational Titles 381.687-014 Cleaner, Commercial or Institutional, DICOT 381.687-014, 920.587-018 Packager, Hand, DICOT 920.587-018. A landscape laborer requires a language level of 2. Dictionary of

7

Occupational Title 408.687-014 Laborer, Landscape, DICOT 408.687-014. As the ALJ identified two language level 1 jobs that consist of a substantial number of jobs in the economy, the Court shall only address whether Plaintiff's ability to perform those jobs is consistent with the DOT.

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000). Level 1 is the lowest language development contemplated by the DOT. 2 Dictionary of Occupational Titles, App. C—Components of the Definition Trailer, see also Donahue v. Barnhardt, 279 F.3d 441, 445 (7th Cir. 2002) ("basic literacy [defined as a vocabulary of 2,500 words, the ability to read about 100 words a minute, and the ability to print simple sentences] is essential for *every job in the economy*") (emphasis in original). Courts recognize that a finding that an illiterate individual is unable to do level 1 jobs would mean that illiteracy is a per se disability under the DOT which would be illogical and conflict with the Social Security regulations. Ogannesyan v. Colvin, No. CV 15-0220-JPR, 2016 WL 2982182, at *16 (C.D. Cal. May 23, 2016), judgment entered, No. CV 15-0220-JPR, 2016 WL 2982181 (C.D. Cal. May 23, 2016); Meza v. Astrue, No. C-09-1402-EDL, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011).

The vocational guidelines themselves identify that a younger individual who is illiterate or unable to communicate in English is not disabled if they can perform their prior unskilled work or have no past relevant work. 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 201.24. "For individuals who are under age 45, age is a more advantageous factor for making an adjustment to other work. It is usually not a significant factor in limiting such individuals' ability to make an adjustment to other work, including an adjustment to unskilled sedentary work, even when the individuals are unable to communicate in English or are illiterate in English." Id. at § 200(h)(2). Since every job in the economy requires at least a language level 1, a finding that a plaintiff is literate would demonstrate their ability to perform language level 1 jobs.

The ALJ found that Plaintiff was able to communicate in English (AR 36), and the VE opined that his testimony did not conflict with the DOT (AR 72.) Substantial evidence supports the ALJ's determination that Plaintiff has the ability to work at language level 1 jobs.

**B.     Moderate Limitations Opined by Dr. Portnoff**

Plaintiff argues that the ALJ erred by failing to include the moderate limitations found by Dr. Portnoff in her residual functional capacity. Specifically, Plaintiff contends that the ALJ's decision did not provide reasons to reject Dr. Portnoff's findings that Plaintiff had moderate limitations in her ability to complete a normal workweek or workday without interruptions from a psychiatric condition and her ability to deal with stress encountered in a competitive work environment is moderately limited. Defendants respond that Plaintiff's contention that she is disabled due to her moderate limitations is meritless and that the ALJ properly relied on the opinions of the agency physicians who translated the limitations found by Dr. Portnoff into a residual functional capacity assessment.

"The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The ALJ must pose a hypothetical to the VE that derives from the RFC and it "must set out all the limitations and restrictions of the particular claimant." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

The ALJ considered the opinion of Dr. Portnoff. (AR 34.) Dr. Portnoff conducted a comprehensive psychological examination of Plaintiff on March 16, 2012. (AR 499-505.) Dr. Portnoff opined that Plaintiff was not capable of managing her own funds. (AR 504.) She can perform simple and repetitive tasks, but has moderate limitations in her ability to perform detailed and complex tasks due to deficits in concentration, mental flexibility, and memory and also due to depression. (AR 504.) Plaintiff has mild restrictions in her ability to interact with coworkers and the public due to depression and deficits in concentration, memory, and mental speed. (AR 504.) Plaintiff has mild limitations in her ability to work on a consistent basis without special or additional instruction and ability to maintain regular attendance in the workplace due to asociality. (AR 504.) Plaintiff has moderate limitations in her ability to

complete a normal workweek or workday without interruptions from a psychiatric condition due to combined cognitive and affective symptoms. (AR 504.) Plaintiff's ability to deal with stress encountered in a competitive work environment is moderately limited due to depression. (AR 504.)

The ALJ gave Dr. Portnoff's findings significant weight because his examination findings supported the limitations opined. (AR 35.) The ALJ found that Dr. Portnoff's diagnoses of depression and learning disorder were consistent with Plaintiff's complaints to her treating doctors and her educational records. (AR 35.) The ALJ also found that no doctor had opined greater limitations. (AR 35.)

The ALJ also gave significant weight to the opinions of the agency physicians, Drs. Rudnick and Morris, because they were consistent with the opinion of Dr. Portnoff and the evidence taken as a whole. (AR 35.) On April 17, 2012, Dr. Rudnick completed a case analysis and residual functional capacity assessment. (AR 88-94.) Dr. Rudnick found that Plaintiff would have some difficulties with detailed/complex instructions, she can understand, remember, follow, and perform repetitive three step instructions and tasks. (AR 91.) Plaintiff's symptoms would affect concentration, persistence, and pace, but Plaintiff can persist and attend and keep an acceptable pace for a normal work schedule. (AR 92.) Plaintiff's symptoms would be compatible with some social difficulties, but Plaintiff can accept supervision, and can successfully engage in superficial work task related interpersonal interactions with coworkers. (AR 92.) Limited public contact was recommended. (AR 92.) Plaintiff did not have adaption limitations. (AR 92.)

Dr. Morris reviewed the case on reconsideration on October 26, 2012. (AR 114-119.) Dr. Morris made the same residual functional capacity findings as Dr. Rudnick. (AR 116-117.)

While Plaintiff argues that the residual functional capacity assessment did not contain the limitations opined by Dr. Portnoff, the residual functional capacity findings need not be identical to the relevant limitations but must be consistent with them. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010). "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with

restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Dr. Portnoff did not opine that Plaintiff was unable to deal with workplace stress or complete a normal workweek or workday without interruptions from a psychiatric condition, but that she had moderate limitations in these areas. Here, the agency physicians considered Plaintiff's moderate limitations and found that despite these limitations she was able to perform repetitive three step instructions and tasks, can persist and attend and keep an acceptable pace for a normal work schedule, and engage in superficial work task related interpersonal interactions with coworkers with limited public contact. The residual functional capacity is consistent with the moderate limitations opined by Dr. Portnoff which were translated into a residual functional capacity assessment by Drs. Rudnick and Morris.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in finding that Plaintiff was literate and properly incorporated the limitations opined by Dr. Portnoff in the residual functional capacity assessment. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED and Defendant's motion for summary judgment is GRANTED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Claudia Guerrero. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **May 18, 2017**

UNITED STATES MAGISTRATE JUDGE